(Not for Publication)                    (Docket Entry Nos. 38, 39, 47, 51)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

_____
                                        :
MARIO P. CINCERELLA,                    :
                                        :
                    Plaintiff,          :       Civil No. 06-1183 (RBK)
                                        :
        v.                              :       **OPINION**
                                        :
EGG HARBOR TOWNSHIP POLICE              :
DEPARTMENT, et al.,                     :
                                        :
                    Defendants.         :
_____ :

**KUGLER**, United States District Judge:

        This action arises out of the arrest and detention of Plaintiff Mario P. Cincerella on March

14, 2004.  Plaintiff brought numerous claims pursuant to 42 U.S.C. § 1983 and state law against

the dispatcher and police officers involved in his arrest, the Egg Harbor Township Police

Department, former Egg Harbor Township Chief of Police John J. Coyle, and John Doe

Probation Officers.  Presently before the Court are motions for summary judgment filed by all

remaining defendants in this matter.[1]  For the reasons discussed below, the motions filed by

Casey Simerson, Gary Rzemyk, John J. Coyle and the Egg Harbor Township Police Department

will be granted.  The motion filed by Charles Davenport, Paul Roden and Edward Bertino will be

granted in part and denied in part.  In addition, the John Doe defendants will be dismissed.

_____

        [1] In a January 30, 2009 opinion and order, this Court granted a motion for summary
judgment filed by the State of New Jersey.

1

## I.    BACKGROUND

### A.  Facts

On March 13, 2004, Officer Gary Rzemyk of the Egg Harbor Township Police Department stopped a car in which Plaintiff Mario P. Cincerella ("Plaintiff") was a passenger. Rezemyk notified Egg Harbor Township Police Dispatcher Casey Simerson that he had stopped a vehicle while on patrol and provided Simerson with the "tag number" of the vehicle.  Simerson knew that this vehicle was registered to Carol Callahan, whom Simerson knew to be the daughter of Mary Moore, another Egg Harbor Township Police Dispatcher.  Simerson believed that the passenger in the car was Plaintiff, who was Callahan's boyfriend.  Simerson believed Plaintiff was a gang member and drug user.  Simerson ran an in-house search for prior arrests, which revealed Plaintiff's birth date.  Simerson then used Plaintiff's birth date to run a National Crime Information Center ("NCIC") search; this search revealed an outstanding child support bench warrant.  This warrant had been issued on October 9, 2003, and stated that Plaintiff could be released "upon payment of $630.00."  After the vehicle stop ended, Simerson called Rzemyk to advise him of the warrant.  She called Rzemyk again the next day and told him that she had heard that Mary Moore was upset that Plaintiff had not been arrested.

On March 14, Rzemyk informed Officer Charles Davenport of the outstanding warrant. Davenport contacted Simerson, who re-ran the NCIC search and confirmed that there was an active warrant for Plaintiff.   Davenport, along with Officer Edward Bertino and Officer Paul Roden, went to the address listed on the warrant to arrest Plaintiff.  When they arrived, they learned that Plaintiff no longer lived at that address.  They saw Callahan, however, who told them that Plaintiff was at home with their children.  Defendants claim that Callahan gave them

Plaintiff's new address; Plaintiff claims that she did not give them her full address, but gave the name of the apartment complex where she and Plaintiff lived.

Davenport, Roden and Bertino then went to Plaintiff's apartment to arrest him.  The officers claim that they knocked on the front door and no one responded; Plaintiff states that the officers never knocked.  The officers then climbed over the railing of an enclosed porch and entered the apartment through a sliding glass door.  According to Plaintiff, this door was locked.  Once inside the apartment, the officers found Plaintiff under a bed and handcuffed him.  According to Plaintiff and Callahan, Plaintiff tried to explain that there was no warrant for his arrest and he and Callahan tried to show the officers Plaintiff's pay stubs to prove that money was being deducted from them to satisfy his child support obligations.  Callahan, who was on the phone with her mother, Moore, asked the officers to speak to Moore, but they refused.

The officers removed Plaintiff from the apartment and put him in the police car.  Plaintiff states that he injured his hand when he was pushed into the police car with his handcuffed hands behind his back.  Plaintiff was taken to the Egg Harbor Township Police Department for processing.  The Police Department would not accept payment from Plaintiff of the $630.00 he allegedly owed in child support.  Plaintiff was taken from the Police Department to Shore Memorial Hospital for examination and treatment of his hand.  Plaintiff claims that at the hospital, Roden stated loudly that Plaintiff was an escaped murderer from Alabama.

After being examined at the hospital, Plaintiff was taken to the Atlantic County jail, where he was held for approximately twelve hours.  Plaintiff was released on the morning of April 15 without being required to pay the $630.00.  At some point after Plaintiff was arrested, the warrant for his arrest was vacated.

3

### B.  Procedural History

On March 14, 2006, Plaintiff filed a complaint against the Egg Harbor Township Police Department, the State of New Jersey, Chief of Police John J. Coyle, and John Does Probation Officers.  Plaintiff filed an amended complaint on September 12, 2007, adding Davenport, Roden, Bertino, Rzemyk and Simerson as defendants.

In Count One of the Amended Complaint, Plaintiff alleges that the actions of Davenport, Roden, Bertino, Rzemyk, Simerson and the John Does resulted in his false arrest and detention, in violation of his rights under the Fourth and Fourteenth Amendments of the U.S. Constitution, 42 U.S.C. § 1983 and the laws of the State of New Jersey.  Plaintiff further states that the Egg Harbor Township Police Department did not allow him to pay the child support he allegedly owed.  In Count Two, Plaintiff repeats his allegations of false arrest and imprisonment.  Plaintiff further states that Roden loudly called Plaintiff "an escaped murderer from Alabama" even though Roden knew this statement was false.  In Count Three, Plaintiff alleges that Coyle and the Police Department failed to use reasonable care in hiring, failed to properly train, supervise, and discipline officers and dispatchers, and failed to provide adequate safeguards to prevent Plaintiff's false, arrest, detention, imprisonment and malicious prosecution.  Count Four contains claims against the State of New Jersey, and Count Five contains claims against John Doe Probation Officers.

All Defendants filed motions for summary judgment.  In an earlier opinion and order, this Court granted the motion for summary judgment filed by the State of New Jersey.

## II.  STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"  Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

"[T]he party moving for summary judgment under Fed.R.Civ.P. 56(c) bears the burden of demonstrating the absence of any genuine issues of material fact."  Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996).  The moving party may satisfy its burden either by "produc[ing] evidence showing the absence of a genuine issue of material fact" or by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  If the moving party satisfies its burden, the nonmoving party must respond by "set[ting] out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).  "If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."  Id.

5

## III.  DISCUSSION

### A.  Casey Simerson

In her motion for summary judgment, Simerson argues that she is entitled to summary judgment because: (1) Plaintiff had no privacy interest in information in the NCIC database and therefore Simerson did not violate his state or federal constitutional rights in conducting an NCIC search; (2) Simerson cannot be held liable for Plaintiff's arrest, any excessive force used against Plaintiff, and any inappropriate comment made about Plaintiff; (3) Plaintiff has not articulated a claim for conspiracy; and (4) Simerson is entitled to qualified immunity with regard to the NCIC search.

The Court finds that Simerson's search of the NCIC database did not violate the federal or state constitution, that Plaintiff's arrest was lawful, and that Simerson cannot be held liable for any excessive force used by her co-defendants or any inappropriate comment Roden made about Plaintiff.  Thus, Simerson's motion for summary judgment will be granted.

### 1.  The NCIC Search

The Court finds that Simerson did not violate Plaintiff's federal or state constitutional rights by running Plaintiff's birth date through the NCIC database.  "The touchstone of Fourth Amendment analysis is whether a person has a 'constitutionally protected reasonable expectation of privacy.'" California v. Ciraolo, 476 U.S. 207, 211 (1986) (citation omitted).  A person does not have a reasonable expectation of privacy in public records such as those accessed through the NCIC database.  See United States v. Ellison, 462 F.3d 557, 562 (6th Cir. 2006) (finding individual did not have expectation of privacy in information regarding outstanding warrant retrieved from computer database); Eagle v. Morgan, 88 F.3d 620, 628 (8th Cir. 1996) (finding

Plaintiff had "no legitimate expectation of privacy in the contents of his criminal history file"). Because a person has no reasonable expectation of privacy in the information in the NCIC database, searching a person's record through the NCIC database does not violate the federal or state constitution.  See Eagle, 88 F.3d at 628 (finding NCIC search did not violate Plaintiff's federal constitutional rights); State v. Sloane, 939 A.2d 796, 803-04 (N.J. 2008) (finding NCIC search did not violate federal or state constitution).  The motives of the person searching the NCIC database are not relevant to the issue of whether there has been a constitutional violation. See Eagle, 88 F.3d at 627-28 (finding no Fourth Amendment violation even though officers accessed NCIC for improper purpose).  Thus, Simerson's act of running Plaintiff's birth date through the NCIC database, regardless of her motives, did not violate Plaintiff's constitutional rights.

### 2. Arrest

Simerson argues that Plaintiff's arrest was lawful, and that even if it was not, she cannot be held liable for it because she did not participate in the arrest.   The Court finds that the arrest was lawful, and that Simerson is therefore entitled to summary judgment on Plaintiff's claims arising out of his arrest.

An arrest is lawful if it is supported by probable cause.  See Beck v. Ohio, 379 U.S. 89, 91 (1964) (addressing Fourth Amendment claim); Wildoner v. Borough of Ramsey, 744 A.2d 1146, 1154 (N.J. 2000) (addressing claims of false arrest based on U.S. Constitution and state law).  Probable cause exists if, at the time of the arrest, "the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [plaintiff] had committed or was

committing an offense." <u>Beck</u>, 379 U.S. at 91.  In this case, Plaintiff does not dispute that there

was an outstanding warrant for his arrest on March 14, 2004.  (Statement of Undisputed Material

Facts by Davenport et al. and Plaintiff's Response at ¶ 28, 36).  While "an erroneously issued

warrant cannot provide probable cause for an arrest," <u>Berg v. County of Allegheny</u>, 219 F.3d

261, 269-70 (3d Cir. 2000), Plaintiff does not assert that the warrant for his arrest was

erroneously issued.  Further, while an arrest warrant that had already been quashed at the time of

the arrest cannot provide probable cause, <u>see</u> <u>Murray v. City of Chicago</u>, 634 F.2d 365, 366 (7th

Cir. 1980), Plaintiff admits that the warrant for his arrest was not vacated until after he was

arrested. (Statement of Undisputed Material Facts by the Egg Harbor Township Police

Department and Coyle and Plaintiff's response at ¶ 67.)

Plaintiff's arrest pursuant to an outstanding warrant did not become unlawful simply

because Davenport, Roden and Bertino refused to look at his pay stubs or speak to Moore on the

phone.  The fact that money was being deducted from Plaintiff's paycheck for child support does

not prove that Plaintiff had paid the $630.00 required by the warrant.  Further, even if Moore had

the chance to tell Davenport, Roden and Bertino that the warrant was invalid, they were not

required to believe her version of events.

### 3. Excessive Force and Roden's Comment

The Court finds that Simerson is entitled to summary judgment with respect to Plaintiff's

claim that Davenport, Roden and Bertino used excessive force and that Roden called Plaintiff an

escaped murderer from Alabama.

Assuming that the arresting officers used excessive force, Simerson cannot be held liable

for the use of such force.  A police officer may be liable for excessive force even if that officer

8

does not personally inflict the injury.  See Smith v. Mensinger, 293 F.3d 641, 650-52 (3d Cir.

2002).  However, in order to be held liable in such circumstances, the officer must either know or

have reason to know that other officers are using excessive force, have a reasonable opportunity

to prevent the use of such force, and fail to act.  See id. (finding that plaintiff could recover if he

could show that another officer attacked him and defendant "ignored a realistic opportunity to

intervene").  Here, Plaintiff has not pointed to any evidence that Simerson knew or had reason to

know that the arresting officers would use excessive force and ignored a reasonable opportunity

to intervene.  Thus, Simerson is entitled to summary judgment with respect to Plaintiff's

excessive force claim.

Similarly, even if Plaintiff's constitutional rights were violated when Roden stated that

Plaintiff was an escaped murderer from Alabama, there is no evidence that Simerson either

caused Roden to make the comment or had reason to know that Roden would make the comment

and ignored a reasonable opportunity to intervene.

Plaintiff argues that Simerson can be held liable for any constitutional violations by

Davenport, Roden and Bertino because she caused the violations.  Liability under § 1983 extends

not only to those who directly participate in a constitutional violation, but also to those who

proximately cause a constitutional violation.  See Malley v. Briggs, 475 U.S. 335, 345 n.7 (1986)

(noting officer whose request for a warrant contained insufficient information could be held

liable for subsequent arrest even though he did not participate in arrest).  A person is "responsible

for the natural consequences of his actions."  Id. (quoting Monroe v. Pape, 365 U.S. 167, 187

(1961)).  The Court finds that any excessive force used by Davenport, Roden and Bertino was not

the natural consequence of Simerson's actions.  Nor was Bertino's comment about Plaintiff.

Plaintiff also argues that Simerson can be held liable for the actions of her co-defendants because she was part of a conspiracy.  "To demonstrate a conspiracy under § 1983, a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right 'under color of law.'"  Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 700 (3d Cir. 1993) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970)), abrogated on other grounds, United Artists Theatre Circuit, Inc. v. Township of Warrington, 316 F.3d 392 (3d Cir. 2003).  Here, Plaintiff has not shown that there is evidence that Simerson entered into an agreement to deprive Plaintiff of his constitutional rights.  As previously stated, the arrest itself did not violate the Fourth Amendment.  Furthermore, Plaintiff has not shown that there is evidence that Simerson entered into an agreement with anyone else to use excessive force against Plaintiff or make an insulting comment about him.  In sum, Plaintiff has not shown that there is evidence to support a claim against Simerson for excessive force or for any claim arising out of Roden's comment.

**B.  Gary Rzemyk**

Rzemyk argues that he is entitled to summary judgment because there is no evidence that he participated in a conspiracy in violation of federal or state law or that either he or his co-defendants violated Plaintiff's constitutional rights.  He also argues that Plaintiff is not entitled to punitive damages or damages for pain and suffering or economic loss.   Because the NCIC search and arrest were lawful, and because Plaintiff cannot connect Rzemyk to any of his other claims through a conspiracy or causation theory, the Court finds that Rzemyk is entitled to summary judgment.

In order to support his claims of conspiracy under federal and state law, Plaintiff must

present some evidence of an agreement to commit an unlawful act.  See Parkway Garage, 5 F.3d at 700 (describing § 1983 conspiracy claim);  Banco Popular N. Am. v. Gandi, 876 A.2d 253, 263 (N.J. 2005) ("In New Jersey, a civil conspiracy is 'a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage.'" (citation omitted)).  As previously explained, Plaintiff's arrest did not violate federal or state law.  Therefore, Rzemyk cannot be held liable for conspiracy with respect to the arrest.  Further, Plaintiff has not demonstrated that there is any evidence of an agreement between Rzemyk and anyone else to violate the law in any other way.  Plaintiff's reliance on evidence that Rzemyk communicated with his co-defendants in order to serve an outstanding warrant does not support a conspiracy claim.

Plaintiff, again relying on Malley v. Briggs, 475 U.S. 335, asserts that Rzemyk can be held liable for causing any constitutional violations committed by his co-defendants.  As previously explained, the search of the NCIC database and arrest of Plaintiff were lawful.  Furthermore, there is no evidence that Rzemyk's actions, passing the information he received from Simerson to Davenport, proximately caused any excessive force or inappropriate comment by his co-defendants.

### C.  Officers Davenport, Roden and Bertino

In their motion for summary judgment, Davenport, Roden and Bertino argue that they are entitled to summary judgment with respect to all claims against them because they were not named as defendants until after the statute of limitations had run.  In addition, they argue that the arrest of Plaintiff was lawful, that they were authorized to enter Plaintiff's residence to effectuate

the arrest, and that even if they were not authorized, Plaintiff did not suffer any damages as the result of the entry and they are entitled to qualified immunity. Further, they argue that there is no legal basis to conclude that they used excessive force in handcuffing Plaintiff or that Plaintiff's rights were violated when Roden said that Plaintiff was an escaped murderer from Alabama. They also claim that Plaintiff may not recover punitive damages.

The Court finds that there is insufficient evidence to determine whether Davenport, Roden and Bertino are entitled to summary judgment based on the statute of limitations, and therefore the Court must address each of Plaintiff's substantive claims. For the reasons previously expressed with regard to the other defendants, Davenport, Roden and Bertino are entitled to summary judgment on Plaintiff's claim of false arrest. The Court also finds that Davenport, Roden and Bertino are entitled to summary judgment with respect to Plaintiff's claim regarding Roden's comment. However, the Court finds that they are not entitled to summary judgment with respect to the claims related to violating the knock and announce rule, using excessive force, and punitive damages.

### 1.  Statute of Limitations

Defendants argue, and Plaintiff does not dispute, that the two-year statute of limitations began to run on March 14, 2004, the date of his arrest. Plaintiff filed his original complaint on March 14, 2006, within the limitations period; this complaint named only the Egg Harbor Township Police Department, the State of New Jersey, and John Does Probation Officers as defendants. Plaintiff filed his amended complaint, which added Davenport, Roden and Bertino as defendants, on September 12, 2007 after the statute of limitations had run. Thus, the claims against Davenport, Roden and Bertino are "barred by the statute of limitations unless the

12

amendment relates back to the original complaint." <u>See</u> <u>Urrutia v. Harrisburg County Police Dep't</u>, 91 F.3d 451, 457 (3d Cir. 1996).

Plaintiff argues that Magistrate Judge Joel Schneider ruled on the statute of limitations issue when he granted Plaintiff's motion to amend his complaint. However, Judge Schneider's opinion and order do not address the statute of limitations, and so the Court must address the issue now.

At this time, the Court lacks sufficient information to determine whether the amended complaint relates back to the date that the original complaint was filed. An amended complaint relates back when:

> (A) the law that provides the applicable statute of limitations allows relation back;
> (B) the amendment asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading; or
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1).

Under Rule 15(c)(1)(A), the Court will allow relation back if New Jersey law provides for it. However, New Jersey's general rule regarding relation back contains almost exactly the same requirements as the federal rule. <u>See</u> N.J.R. 4:9-3. While New Jersey also allows the use of a fictitious name to toll the statute of limitations, the fictitious party rule applies "if the defendant's true name is unknown to the plaintiff" when the plaintiff files a complaint. N.J.R. 4:26-4. Here,

Plaintiff referred to Davenport, Roden and Bertino by name in his original Complaint; thus, the fictitious party rule is inapplicable.

The first requirement of Federal Rule 15(c)(1)(C) and New Jersey Rule 4:9-3 is met in this case because Plaintiff's claims against Davenport, Roden and Bertino arise out of the same conduct described in Plaintiff's original complaint, Plaintiff's arrest on March 14, 2004. However, the Court has insufficient information to determine whether the second requirement, notice to the new defendants, has been met.  Neither Plaintiff nor Defendants have addressed this issue.  Therefore, the Court cannot determine at this time whether Plaintiff's claims against Davenport, Roden and Bertino are barred by the statute of limitations.

**2. Entry into Plaintiff's Residence to Effectuate the Arrest**

Defendants argue that the arrest warrant gave them the authority to enter Plaintiff's residence, that they complied with the knock and announce rule, and that even if they did not comply with the knock and announce rule, their entry was lawful.  Further, they argue that even if their entry was not lawful, Plaintiff did not suffer any damage as a result of it because the warrant subjected him to arrest at any time.  Finally, Defendants argue that they are entitled to qualified immunity, because a reasonable police officer would have believed that he was authorized to enter Plaintiff's apartment to execute the arrest warrant.  The Court finds that there is conflicting evidence as to whether the officers complied with the knock and announce rule, and that exigent circumstances did not excuse any failure to comply with the rule.  Further, the Court finds that the fact that the officers had a valid arrest warrant does not excuse a violation of the knock and announce rule.  Finally, the Court finds that Defendants are not entitled to summary judgment on the basis of qualified immunity.

Police officers may enter a dwelling to execute an arrest warrant if they have reason to believe that the subject of the warrant is inside.  Payton v. New York, 445 U.S. 573, 603 (1980). However, police officers usually must first announce their presence and purpose.  See Wilson v. Arkansas, 514 U.S. 927, 929 (1995) (holding that "common-law 'knock and announce' principle forms a part of the reasonableness inquiry under the Fourth Amendment").  If officers have complied with the knock and announce rule, they may break a locked door in order to execute a warrant.  See id. at 931 (describing common law principles).  Even if they have not complied with the knock and announce rule, police officers may forcibly enter a residence to execute an arrest warrant if they "have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." Richards v. Wisconsin, 520 U.S. 385, 394 (1997).

In this case, the Court finds that the officers had reason to believe that Plaintiff was inside his home at the time they entered.  Plaintiff argues that the evidence suggests that the officers were "not even certain" that Plaintiff was inside.  (Plaintiff's Opposition Brief at 4.)  However, certainty is not required.  Officers need only have "a reasonable belief the arrestee (1) lived in the residence, and (2) is within the residence at the time of entry."  United States v. Veal, 453 F.3d 164, 167 (3d Cir. 2006) (quoting United States v. Gay, 240 F.3d 1222, 1226 (10th Cir.2001)). The Third Circuit Court of Appeals has not decided whether this reasonable belief standard is the same as the probable cause standard or is less demanding.  See Veal, 453 F.3d at 167 n.3 (noting that higher probable cause standard had been met).  Under the probable cause standard, courts must "apply a 'common sense approach' and consider 'the facts and circumstances within the

15

knowledge of the law enforcement agents, when viewed in the totality.'" Id. at 168 (citation omitted).

In this case, Plaintiff concedes that Callahan told the officers that he was "at home" with their children.  (Statement of Undisputed Material Facts by Davenport et al. and Plaintiff's response at ¶ 46.)  Further, while Plaintiff denies that Callahan gave the police their full address, he admits that she gave them the name of the apartment complex in which she and Plaintiff lived.  (Id. at ¶ 47.)  Plaintiff admits that immediately after speaking to the police, Callahan drove to her current home, and arrived approximately three to five minutes after her conversation with the police.  (Id. at ¶¶ 52, 53, 55.)  Plaintiff concedes that when the officers arrived at his home, Davenport saw Callahan's car parked behind the apartment where she and Plaintiff lived, and that Davenport felt that the car was still warm. (Id. at ¶¶ 69, 70.)  Davenport called the dispatcher at the Egg Harbor Township Police Department and confirmed that Callahan was the registered owner of the car.  (Id.  at ¶¶ 71-74.)  Based on these facts and circumstances known to the arresting officers in the moments preceding the arrest, the Court finds that they had probable cause to believe that Plaintiff lived in the apartment and was present at the time they entered.

However, the Court finds that there is a genuine issue of material fact as to whether the officers complied with the knock and announce rule.  While Bertino testified that the officers identified themselves as police officers as they knocked on the front door to the apartment (Deposition of Bertino at 93), Roden testified that they did not (Deposition of Roden at 65).  Further, Plaintiff testified that he did not hear the officers until they pried the sliding door open.  (Deposition of Plaintiff at 121.)

Defendants argue that even if they did not knock and announce their presence and

16

purpose before entering, exigent circumstances justified their forced entry.  Specifically,

Defendants argue that they were concerned for Callahan's safety.  At the time Plaintiff was

arrested, Roden knew that Plaintiff had been arrested, in the 1990s, for crimes including robbery,

aggravated assault, simple assault, theft and burglary.  (Statement of Undisputed Material Facts

by Davenport et al. and Plaintiff's response at ¶ 37; Deposition of Roden at 14-16.)[2]  Further,

Defendants state that they knew Callahan was inside the apartment, and that they heard

movement inside the apartment before they entered.  However, there is no evidence that Plaintiff

had a history of domestic violence or had a weapon at the time of his arrest.  Further, the arrest

warrant was for a non-violent offense.  The Court finds that the information the officers

possessed at the time they entered Plaintiff's apartment was insufficient to create a reasonable

suspicion that Callahan was in danger.

Defendants next argue that even if they violated the knock and announce rule, and were

not justified in doing so because of exigent circumstances, they are entitled to summary judgment

because Plaintiff did not sustain any damage as a result of their forced entry.  Defendants argue

that a valid warrant made Plaintiff susceptible to arrest at any time.  However, a valid arrest

warrant does not, as Defendants seem to suggest, relieve Defendants of the need to comply with

the knock and announce rule.  Cf. Richards, 520 U.S. at 393 n.5 ("While it is true that a

no-knock entry is less intrusive than, for example, a warrantless search, the individual interests

implicated by an unannounced, forcible entry should not be unduly minimized.").  Moreover,

Plaintiff need not produce evidence of damages to defeat Defendants' motion for summary

---

[2]  Plaintiff had been arrested on contempt charges more recently.  (Statement of
Undisputed Material Facts by Davenport et al. and Plaintiff's Response at ¶ 37.)

judgment.

Finally, defendants argue that even if they violated the knock and announce rule without justification, they are entitled to qualified immunity because a reasonable police officer in their position would have believed he was authorized to enter Plaintiff's apartment.  Government officials are entitled to qualified immunity where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 129 S. Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  The Court finds that it is not appropriate to grant Defendants' motion for summary judgment on the basis of qualified immunity.  At the time of Plaintiff's arrest, the knock and announce rule was a clearly established right.  See Kornegay v. Cottingham, 120 F.3d 392, 396-97 (3d Cir. 1997) (finding "officers are shielded by qualified immunity only if they 'could reasonably have decided that an urgent need existed for . . . entry into the premises'" without knocking and announcing (citation omitted)).  In this case, a reasonable person would have known that the police must comply with the knock and announce unless there are exigent circumstances and would have known that there were no exigent circumstances at the time of the entry into Plaintiff's residence.

### 3. Excessive Force

Plaintiff claims that Defendants used excessive force by handcuffing him, making the handcuffs too tight, and pushing him into the police car.  Claims that police officers used excessive force in an arrest are analyzed under the Fourth Amendment objective reasonableness standard.  Graham v. Connor, 490 U.S. 386, 388 (1989).  Reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of

18

hindsight." Id. at 396. "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." Id. (internal citation omitted). In assessing whether the use of force was objectively reasonable, courts consider "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. Courts may also consider the following factors:

> the possibility that the persons subject to the police action are violent or
> dangerous, the duration of the action, whether the action takes place in the context
> of effecting an arrest, the possibility that the suspect may be armed, and the
> number of persons with whom the police officers must contend at one time.

Kopec v. Tate, 361 F.3d 772, 777 (3d Cir. 2004). While reasonableness is often a question for the jury, summary judgment in favor of defendants is appropriate "if the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances." Id. (quoting Abraham v. Raso, 183 F.3d 279, 290 (3d Cir. 1999)).

The use of handcuffs by itself cannot support an excessive force claim in this case. Defendants used handcuffs in the course of an arrest of an individual who had been arrested for violent crimes before and who was found lying on the floor, partly underneath a bed, before he was handcuffed. Under these circumstances, the use of handcuffs was objectively reasonable.

However, the way Plaintiff was treated after he was handcuffed may support an excessive force claim. In assessing whether certain uses of handcuffs constitute excessive force, the Third Circuit Court of Appeals considers the intensity of the plaintiff's pain, the officer's awareness of

the plaintiff's pain, whether the plaintiff asked to have the handcuffs removed and how long after those requests the handcuffs are removed, whether there were circumstances justifying a delay in removing the handcuffs, and the severity of the injury the plaintiff suffered.  See Gilles v. Davis, 427 F.3d 197, 207-08 (3d Cir. 2005) (finding insufficient evidence of excessive force where plaintiff claimed his singing should have alerted police to his pain, there were no "obvious visible indicators" of plaintiff's pain, plaintiff did not express discomfort when handcuffed, and plaintiff did not "seek or receive medical treatment after the fact"); Kopec, 361 F.3d at 777 (reversing grant of summary judgment for  arresting officer where plaintiff alleged that officer excessively tightened handcuffs and ignored his repeated requests to loosen them for ten minutes and that he suffered permanent nerve damage, and where court found that given lack of danger, delay in loosening handcuffs was not justified).

Here, Plaintiff testified that he sustained an injury as a result of the officers excessively tightening his handcuffs and pushing him into the police car.  (Deposition of Plaintiff at 152-56.) Plaintiff testified that when he told the officers that "something popped in his hand" and asked them to loosen his handcuffs, they refused.  (Id. at 152.)  In addition, Plaintiff sought medical treatment after sustaining this alleged injury.  This evidence is sufficient to raise an issue of fact as to the reasonableness of the force used.

Defendants argue that they are entitled to summary judgment because Plaintiff has not produced an expert report suggesting that the force used was in excess of the force generally used by police officers in similar circumstances.  However, Defendants have cited no authority, and the Court has been unable to find any, that suggests that in order to survive a motion for summary judgment on an excessive force claim, a plaintiff must produce an expert report

evaluating the reasonableness of the defendants' actions.  Indeed, some courts have noted that

expert testimony is not always needed to evaluate whether force is reasonable under the

circumstances.  See Jennings v. Jones, 499 F.3d 2, 15 (1st Cir. 2007) (suggesting that some

excessive force claims "may be susceptible to a common sense determination by the jury"); Pena

v. Leombruni, 200 F.3d 1031, 1034 (7th Cir. 1999) (finding jury could determine, without expert

testimony, whether officer's use of deadly force was reasonable).

Defendants further argue that they are entitled to summary judgment because, at most,

Plaintiff claims that the manner in which the handcuffs were applied aggravated a pre-existing

injury.  However, the aggravation of a pre-existing condition may be evidence of excessive force.

See Turmon v. Jordan, 405 F.3d 202, 207-08 (4th Cir. 2005) (noting that while it was unclear

whether force used would have caused injury even if plaintiff did not have pre-existing condition,

summary judgment was not appropriate).

In sum, because the court finds sufficient evidence to create an issue of fact as to whether

the force used was reasonable, the court will deny Davenport, Roden and Bertino's motion for

summary judgment as to the excessive force claim.

### 4.  Roden's Comment

The Court finds that Davenport, Roden and Bertino are entitled to summary judgment

with respect to Plaintiff's claim that they violated his state and federal constitutional rights when

Officer Roden told hospital personnel that Plaintiff "was an escaped murderer from Alabama."

Plaintiff claims that his rights under the Fourth and Fourteenth Amendments to the U.S.

Constitution were violated.  However, because Officer Roden's comment did not constitute or

cause a search or seizure, it cannot be a Fourth Amendment violation.  If Plaintiff's Fourteenth

Amendment claim is a due process claim, it must fail because damage to one's reputation alone, which does not alter or extinguish a "right or status previously recognized by state law," is not a property or liberty interest protected by the Due Process clause.  See Paul v. Davis, 424 U.S. 693, 711-712 (1976).  If Plaintiff's Fourteenth Amendment claim is an equal protection claim, it must fail because he has presented no evidence that the defendants acted with a discriminatory intent. See City of Memphis v. Greene, 451 U.S. 100, 119 (1981) ("[T]he absence of proof of discriminatory intent forecloses any claim that the official action challenged . . . violates the Equal Protection Clause of the Fourteenth Amendment.").  Other than the Fourth and Fourteenth Amendments, Plaintiff does not specify, and the Court is unable to identify, any other federal or state constitutional provisions that could have been violated when Roden made the comment at issue.  Therefore, Defendants are entitled to summary judgment on Plaintiff's claim arising out of Roden's comment.

### 5.  Punitive Damages

Defendants argue that they are entitled to summary judgment on Plaintiff's claim for punitive damages because Plaintiff cannot establish that their conduct was motivated by evil motive or intent.  Defendants focus on only one portion of the standard for determining whether an award of punitive damages is appropriate in a § 1983 action.  A plaintiff may recover punitive damages when a "defendant's conduct is motivated by evil motive or intent, **or** when it involves reckless or callous indifference to the federally protected rights of others."  Smith v. Wade, 461 U.S. 30, 56 (1983) (emphasis added); see also Savarese v. Agriss, 883 F.2d 1194, 1204 (3d Cir. 1989) ("[F]or a plaintiff in a section 1983 case to qualify for a punitive award, the defendant's conduct must be, at a minimum, reckless or callous. Punitive damages might also be allowed if

22

the conduct is intentional or motivated by evil motive, but the defendant's action need not

necessarily meet this higher standard.").  Based on Plaintiff's account of events, a jury could

conclude that Defendants acted with reckless indifference to Plaintiff's federally protected rights

by entering his apartment by force without first announcing their presence and purpose and by

using excessive force in arresting him.  Therefore, the Court will deny Davenport, Roden and

Bertino's motion for summary judgment with respect to punitive damages.

### D.  Egg Harbor Township Police Department

Defendants argue that the Police Department should be dismissed from this case because

police departments are not legal entities distinct from the municipalities they serve.  See N.J.

Stat. Ann. 40A:14-118 (West 1993) (stating that police departments are "an executive and

enforcement function of municipal government").  Plaintiff concedes that the Police Department

is not a separate legal entity.  Because the department is not a distinct legal entity, it is not a

proper defendant in this case and the claims against it will be dismissed.  See Adams v. City of

Camden, 461 F. Supp. 2d 263, 266 (D.N.J. 2006) (granting Police Department's motion for

summary judgment).

### E.  Police Chief John J. Coyle

Coyle argues that he is entitled to summary judgment with respect to the § 1983 and state

law claims, and also argues that Plaintiff should not be entitled to recover damages for pain and

suffering or punitive damages.[3]   The Court finds that Coyle is entitled to summary judgment

with respect to all claims against him, and therefore will not address his arguments with respect

---

[3]  Coyle also argues that he is entitled to summary judgment with respect to any
conspiracy claim against him.  However, in his opposition brief, Plaintiff states that he does not
allege conspiracy against Coyle.  (Plaintiff's Brief at 6.)

to damages.

### 1. Section 1983 Claims

Plaintiff does not state whether he is suing Coyle in his individual or official capacity.[4]

Regardless of the capacity in which Coyle was sued, he is entitled to summary judgment on the §

1983 claims.  A supervisor may be liable in his individual capacity if (1) as a policymaker, he

"with deliberate indifference to the consequences, established and maintained a policy, practice

or custom which directly caused [the] constitutional harm;" or (2) if he "participated in violating

the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge

of and acquiesced in his subordinates' violations."   A.M. ex rel. J.M.K. v. Luzerne County

Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (citations omitted). A suit against a

supervisor in his official capacity is essentially a suit against the governmental entity that

employs him.  Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690 n.55

(1978).  For a governmental entity to be liable under § 1983, "the plaintiff must identify a policy

or custom of the entity that caused the constitutional violation."  A.M., 372 F.3d at 580 (citing

Bd. of County Comm'rs of Bryan County, Okla. v. Brown, 520 U.S. 397, 403 (1997)).

Plaintiff alleges that Coyle's inadequate supervision led to an atmosphere in dispatch

which in turn caused his arrest and incarceration.  Plaintiff focuses on Simerson's personal

---

[4] Defendants argue that Coyle was sued in his official capacity because "all allegations in the amended complaint pertain to his employment in his official capacity of as the Chief of Police of the [Egg Harbor Township Police Department."  (Brief in Support of Motion for Summary Judgment by Egg Harbor Township Police Department and Coyle at 4.)  This is not the correct standard.  See Hafer v. Melo, 502 U.S. 21, 25 (1991) (rejecting argument that "state officials may not be held liable in their personal capacity for actions they take in their official capacity.")

relationships and feelings towards Moore.  Having already determined that the NCIC search[5] and the arrest of Plaintiff were constitutional, the Court finds that Coyle cannot be held liable under § 1983 in his individual or official capacity for these acts.  Furthermore, with respect to Plaintiff's claims that Davenport, Roden and Bertino violated the knock and announce rule and used excessive force, Plaintiff does not allege that Coyle participated in these violations, directed others to inflict them, or had knowledge of the violations and acquiesced in them.  Nor does Plaintiff explain how Coyle's alleged failure to supervise caused these violations.  Plaintiff's statement that Coyle hired, trained and supervised the officers is not sufficient.  Coyle may not be held liable for violations by individual officers merely because he was their supervisor at the time of the alleged violations.  See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (finding civil rights liability cannot be based on respondeat superior theory).

Plaintiff further contends that Coyle may be held liable for the Egg Harbor Township Police Department's policy of not allowing people with child support warrants to pay the release amount on the warrant.  While there is some dispute over who promulgated this policy, the Court finds that even if this was the Police Department's policy, it did not cause a violation of Plaintiff's constitutional rights.  Plaintiff did not have a right to be released upon payment to the township Police Department.  The child support warrant for Plaintiff contained a release form to be signed by the County sheriff, not by the Chief of Police or any officer of a municipal police department.  (Egg Harbor Township Police Department Ex. 9.)  Thus, the Court finds that Coyle may not be held liable for the refusal of Egg Harbor Township officers to accept Plaintiff's

---

[5]  Even if, as Plaintiff alleges, Simerson's NCIC search violated the Police Department's policy, it did not violate Plaintiff's rights under the Constitution.

payment of the release amount on his warrant.

Plaintiff also contends that Coyle may be held liable for his inadequate supervision of the internal affairs investigation that followed Plaintiff's arrest.  However, the internal affairs investigation occurred after all of the violations Plaintiff alleges in his complaint.  Coyle's supervision of the investigation could not have caused any of the violations contained in Plaintiff's complaint.  Plaintiff may not now raise a claim that he did not raise in his complaint. Anderson v. DSM N.V., 589 F. Supp. 2d 528, 534 n.5 (D.N.J. 2008).

### 2.  State Law Claims

Coyle argues that the state law claims against him should be dismissed because Plaintiff did not file a sufficient Tort Claims Act notice.  Before filing a lawsuit against a public entity or employee under the Tort Claims Act, a person must provide notice to the defendants.  N.J. Stat. Ann. 59:8-3.  When a plaintiff sues a public employee, it is sufficient to send a notice to the public entity that employs the defendant.  Velez v. City of Jersey City, 850 A.2d 1238, 1246 (N.J. 2004) ("[W]e reject the State's invitation to extend the Act's notice requirements to mandate that written notice also be given to public employees. Although we note that the better practice is for a potential plaintiff to give notice to both the public entity and the public employee, N.J.S.A. 59:8-8 only requires that notice be given to the public entity.").  The notice need not name the defendants, so long as it describes them.  See Henderson v. Herman, 862 A.2d 1217, 1222 (N.J. Super. Ct. App. Div. 2004). ("[W]e cannot accept that it was the intention of the Legislature that a claimant be barred from suit . . . when the identity of the employee or employees was nearly as clear from the designation or description provided as it would have been by the inclusion of his or her name.").

26

In this case, Plaintiff filed a Tort Claims Act Notice with the Egg Harbor Township Police Department within the required time period.  (Egg Harbor Township Police Department and Coyle Ex. 3.)  If this notice had adequately described Coyle, it may have been sufficient.  However, the notice does not indicate that the Chief of Police will be a defendant.  Therefore, it does not provide adequate notice of a claim against Coyle.

Plaintiff states that the internal affairs investigation, which was conducted within ninety days of his arrest, provided sufficient notice.  The internal affairs report does not suggest that Plaintiff mentioned any claims against Coyle.  Plaintiff has not cited any evidence that he gave notice of an intention to sue Coyle.  Therefore, the Court finds that Coyle is entitled to summary judgment with regard to all state tort claims against him.

Plaintiff also argues that Egg Harbor Township received sufficient notice of his claims.  However, the Township is not named as a defendant.

### F.  Dismissal of John Doe Defendants

In their motion for summary judgment, the Egg Harbor Township Police Department and Coyle argue that the John Doe defendants should be dismissed from this case.  Plaintiff concedes that they should be dismissed.  (Plaintiff's Opposition Brief at 7.)

### IV.  CONCLUSION

For the foregoing reasons, the motions for summary judgment filed by Casey Simerson, Gary Rzemyk, John J. Coyle and the Egg Harbor Township Police Department will be granted.  The motion filed by Charles Davenport, Paul Roden and Edward Bertino will be granted in part and denied in part.  In addition, the John Doe defendants will be dismissed.  As a result, the only remaining claims in this case are the claims against Davenport, Roden and Bertino for the

violation of the knock and announce rule and the use of excessive force.  Further, Plaintiff may

seek punitive damages with respect to these claims.  An accompanying order shall issue today.


Dated:   __3-23-09__                                   __/s/ Robert B. Kugler_____
                                                       ROBERT B. KUGLER
                                                       United States District Judge

28